Filed 1/9/14

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

ANTHONY K. HUI,

    **Plaintiff and Appellant,**

    **v.**

BETH STURBAUM,

    **Defendant and Respondent.**
_____/

**A135597**

**(San Francisco County
Super. Ct. No. CGC10504968)**

Chiropractor Anthony K. Hui sued defendant Beth Sturbaum for defamation, claiming Sturbaum — then an insurance company claims investigator — made false statements to the California Department of Insurance (DOI) and to Winne Yu, an assistant to personal injury lawyer Frank Kim. The trial court granted Sturbaum's anti-SLAPP motion, concluding Dr. Hui's claims arose from protected activity (Code Civ. Proc., § 425.16, subd. (e)).[1] It also determined Dr. Hui could not show a probability of prevailing because Sturbaum's statements to the DOI were absolutely privileged under Civil Code section 47 (Section 47) and her statements to Yu were protected by the qualified common interest privilege in that statute.[2]

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I.

[1] Unless otherwise noted, all further statutory references are to the Code of Civil Procedure. For an overview of the anti-SLAPP statute, see *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 806.

[2] Section 47, subdivision (c) provides a conditional privilege for communications made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable

1

Dr. Hui appeals. He does not challenge the court's findings with respect to Sturbaum's communications with the DOI. Instead, he contends the court erred by granting the anti-SLAPP motion because Sturbaum's statements to Yu did not arise from protected activity under section 425.16, subdivision (e) and because the common interest privilege articulated in Section 47 does not protect Sturbaum's statements to Yu.

We requested supplemental briefing on whether the protected conduct alleged in Dr. Hui's slander cause of action was merely incidental to any unprotected conduct alleged in that claim. We now affirm. In the unpublished portion of the opinion, we conclude Sturbaum's communications with Yu are protected under section 425.16, subdivision (e)(4) as speech made "in connection with . . . an issue of public interest." In the published portion of the opinion, we conclude Dr. Hui has not established a probability of prevailing because the common interest privilege codified in Section 47, subdivision (c) protects Sturbaum's statements to Yu.

FACTUAL AND PROCEDURAL BACKGROUND

Dr. Hui graduated from chiropractic school in 1997. In 1998, he founded Pine Street Chiropractic (Pine Street). A "considerable volume" of Pine Street's business came from "referrals of personal injury clients from numerous local law firms[.]" National Legal Associates — a firm run by attorney Frank Kim — referred personal injury clients to Pine Street for treatment.

In 2003, Dr. Hui settled a civil case brought by a former patient claiming he "mishandled" her. Dr. Hui received a 30-day suspension of his chiropractic license and five years' probation. During that time, he could not treat female patients without a third party present. Dr. Hui's chiropractic license was "fully restored" in March 2008.

In 2008, Sturbaum was a claims representative for Federated Mutual Insurance Company (Federated). She handled liability claims submitted to Federated; she also read "'Alerts'" posted by the National Insurance Crime Bureau (NICB) "regarding potential fraudulent claims practices." Sturbaum reviewed a liability claim involving services

ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

2

performed by Dr. Hui at Pine Street for two women (claimants) who had been in a car accident (the claim). As she reviewed the billing invoices for the claim, she noted "services described on the invoices" that she believed violated the Business and Professions Code and "California Regulations governing chiropractors." Around that same time, Sturbaum learned the NICB was investing Kim, claimants' attorney. Sturbaum researched Dr. Hui with the California Chiropractic Board and "found that he had had prior suspensions and a prior license revocation." During an August 2008 telephone conversation with Dr. Hui, Sturbaum "expressed some concern that the automobile collision in which the [claimants] had been injured was relatively minor." In response, Dr. Hui explained claimants had preexisting medical conditions aggravated by the car accident. He offered to "use apportionment in billing for these patients' treatments[.]"

In 2009, Sturbaum saw an NICB Task Force "Alert" concerning Kim and Dr. Hui. In 2010, the DOI informed Sturbaum it was "investigating Pine Street for potential fraudulent activity" and asked her to provide information. Sturbaum cooperated with the investigation and provided the requested information. In June 2010, Winne Yu, attorney Kim's assistant, called Sturbaum to settle the claim. Yu and Sturbaum discussed Federated's position on the claim. Shortly thereafter, Dr. Hui learned about the DOI investigation.

*The Complaint*

In November 2010, Dr. Hui filed the operative first amended complaint suing doe defendants for trade libel, libel per se, and slander.[3] In September 2011 — and before serving Sturbaum with the complaint — Dr. Hui's attorney deposed Yu. Shortly thereafter, Dr. substituted Sturbaum for Doe 1. In the "factual background" allegations of the operative first amended complaint, Dr. Hui alleged he learned he had become "the target of a DOI investigation 'pursuant to false reports'" submitted by defendants who claimed he "was running a fraudulent chiropractic business, conducted intentional

---

[3] After filing the complaint, Dr. Hui learned the DOI investigation did not result in civil, criminal, or disciplinary action against him or Pine Street.

overcharges for services, engaged in fraudulent or improper billing, and conducted unnecessary and/or unauthorized treatments." Dr. Hui also alleged defendants told personal injury attorneys in the area "not to send their clients to [him] because various insurance companies and/or the DOI were going to put [him] out of business for the improper acts falsely ascribed to [him]. Personal injury attorneys also learned independently of the false accusations ascribed to [Dr. Hui] and subsequent inquiries by the DOI into [Dr. Hui's] business practices."

Dr. Hui's cause of action for trade libel alleged the reports submitted by defendants to the DOI were false and "libelous on their face" because they charged him with "committing fraud and dishonesty." Similarly, the libel per se claim alleged the DOI reports were false and that defendants knew they "would be viewed or heard by persons who were existing clients or potential clients[.]" Dr. Hui's slander cause of action alleged defendants "conspired to make repeated defamatory and false oral statements regarding [Dr. Hui] to the DOI, insurance companies and personal injury attorneys in the area." According to the complaint, "[t]hese oral statements" were false and unprivileged and "have been seen and heard . . . by the DOI, insurance companies and personal injury attorneys in the area. In addition, Defendants made defamatory oral statements to individuals with personal, business and professional relationships with [Dr. Hui]." Dr. Hui sought compensatory and punitive damages.

*The Anti-SLAPP Motion, Opposition, and Reply*

Sturbaum moved to strike the operative complaint pursuant to section 425.16.[4] She argued her "[c]ommunications designed to curb insurance fraud" were "speech 'in connection with a public issue'" under section 425.16, subdivision (e)(3); she claimed any statements made to third parties about Dr. Hui "would have been made for the purpose of alerting potential victims and participants of [Dr. Hui's] suspected fraudulent activities. Thus, they are statements made in connection with a public issue."

---

[4] She also demurred and moved to strike the punitive damages allegations.

4

Sturbaum also argued Dr. Hui could not establish a probability of prevailing on the merits because, among other things, her statements to the DOI were absolutely privileged under Section 47 and because her statements to any third parties were privileged under subdivision (c) of that statute, which provides a conditional privilege for "communications to interested persons" made without malice. Sturbaum contended there was no evidence her statements were "motivated by hatred or ill will toward" Dr. Hui because she "had a very limited connection with [him], on a purely professional level, and thus had no reason to form hatred or ill will toward him." Finally, she claimed her statements were based on a reasonable belief in their truth.

Sturbaum submitted a declaration in support of the motion averring she believed the billing invoices submitted by Dr. Hui for claimants' treatment violated California regulations and the Business and Professions Code. She also stated she learned Kim was being investigated by the NICB and that Dr. Hui's license had been suspended and revoked in 2008. Sturbaum averred she cooperated with the NICB and DOI investigation of Kim and Dr. Hui. Finally, she testified she never "told any personal injury attorney not to send . . . clients to [Dr. Hui]."

In opposition to the motion, Dr. Hui argued Sturbaum's statements to third parties were not protected under section 425.16, subdivision (e)(3) because they were not made in a public forum and because the "general topic of insurance fraud" is not an issue of public interest. As Dr. Hui explained, "[t]he false statements about Dr. Hui's billing being fraudulent and improper, false allegations of sexual misconduct, and damaging instructions to avoid doing business with him are more accurately seen as matters of concern to a few people rather than the public at large, and the defamatory statements are not sufficiently close to the general topic of combatting insurance fraud."

Dr. Hui also argued he had a probability of prevailing because neither Sturbaum's communications with the DOI, nor her statements to Yu, were privileged under Section 47. Dr. Hui argued the qualified common interest privilege in Section 47, subdivision (c) did not apply to Sturbaum's conversation with Yu because Sturbaum acted with malice and because Dr. Hui and "the third party personal injury attorneys are not interested in

5

Dr. Hui in the same manner, are not interested in any DOI investigation of Dr. Hui in the same manner, are not mutually interested in allegations of sexual misconduct by Dr. Hui, and are not mutually interested in assertions that they should avoid doing any business with Dr. Hui."

Dr. Hui submitted a transcript of Yu's deposition, taken before Sturbaum was named as a defendant and served with the complaint. At her deposition, Yu testified Kim asked her in June 2010 to call Federated to "settle the case and obtain the necessary documents to resolve [the claim]." During a conversation with Yu, Sturbaum said "the case was not worth money because . . . this was a small impact matter. So she . . . questioned [ ] the medical treatment." Sturbaum also "may have" mentioned "that the billing could have been fraudulently billed. [¶] She mentioned that [Dr.] Hui [ ] had misconduct or some sort of complaint . . . that [he] should have stopped seeing female patient[s]."[5] Sturbaum also stated the billings were "excessive because of the type of impact" in the car accident and that the billings "could be fraudulent." Yu assumed Sturbaum thought claimants should not have been injured because the property damage to the vehicle was "minimal." Finally, Sturbaum "mentioned that she [ ] made a complaint or [was] going to make a complaint [about] Dr. Hui." Yu thought Sturbaum "may have suggested that we shouldn't have any business to do with Dr. Hui."

Yu thought the conversation was "unusual" because Yu's "purpose was to hopefully resolve this matter with her. [¶] But on the other hand, [Sturbaum] was saying a lot of things that may not be relevant to the case." Yu told Dr. Hui that "an adjuster [was] making these allegations about his practice[.]" After her conversation with Sturbaum, Yu initially was "hesitant" to refer patients to Dr. Hui but she eventually decided Sturbaum's statements were "probably false," which "stopped" her from reconsidering referrals to Dr. Hui. Yu could not remember whether she declined to provide a referral to Dr. Hui after talking with Sturbaum. She explained it was Kim's practice to only "[o]ccasionally" refer clients to specific doctors; instead, his office

---

[5]     Yu clarified, "I'm not sure if she actually said that . . . specifically."

"gives names of doctors for clients to choose, and clients may pick one that may be close to their work or residence."

Dr. Hui offered a declaration in opposition to the motion averring he was surprised to learn the DOI was investigating Pine Street "apparently based on one or more reports that claimed [he] was running a fraudulent chiropractic practice, creating intentional overcharges for services, engaging in fraudulent or improper billing, or performing unnecessary and unauthorized treatments." Dr. Hui stated he learned an insurance company adjuster "had told personal injury attorneys that [his] billing was fraudulent and that they should not send [him] any business." According to Dr. Hui, the adjuster told National Legal Associates "not to continue doing business with [his] practice and to stop sending referrals to Pine Street . . . because of fraudulent billing and sexual misconduct." Dr. Hui further averred he experienced a "sudden downturn" in his business beginning in June 2010, including "dramatically fewer client referrals from National Legal Associates after June 2010[.]" The "drastic decrease in new business . . . forced" him to stop making mortgage payments on his house, to file for bankruptcy, and to close Pine Street.

In reply, Sturbaum argued her communications with the DOI and "with an interested party concerning [Dr. Hui's] billing practices and his prior sexual misconduct" were protected under section 425.16, subdivisions (e)(1), (2), and (4) and were privileged under Section 47. She also claimed Dr. Hui could not establish a probability of prevailing on the merits because: (1) her statements to Yu were privileged; (2) the statements were true and made without malice; and (3) Dr. Hui could not establish her statements damaged him because Yu testified she continued to refer patients to Dr. Hui after the conversation.

*The Order Granting the Anti-SLAPP Motion*

Following a hearing, the court granted the motion. The court concluded Dr. Hui's claims were "based on non-incidental allegations arising from protected activity covered by the anti-SLAPP statute. . . . To the extent Dr. Hui's claims are based on communications between Ms. Sturbaum and the Department of Insurance, those claims are barred by the absolute litigation privilege." The court also determined Dr. Hui could

7

not demonstrate a probability of prevailing on the merits "through the deposition testimony of Ms. Yu that Ms. Sturbaum spoke to Ms. Yu about Dr. Hui."[6] It explained Yu's deposition testimony was "insufficient to show that there is any merit to any of Dr. Hui's claims" because the conversation was covered by the qualified common interest privilege set forth in Section 47, subdivision (c). According to the court, Yu's deposition testimony would not allow a reasonable juror to conclude Sturbaum said anything to Yu "with malice such as to defeat the qualified [Section] 47(c) privilege." The court awarded attorney fees to Sturbaum and took Sturbaum's demurrer and motion to strike portions of the operative complaint off calendar.

## DISCUSSION

"In ruling on a special motion to strike, the trial court follows a two-step analysis that involves shifting burdens. [Citation.] The moving defendant carries the initial burden to show the challenged cause of action arises from protected free speech or petitioning activity. [Citation.] The burden is satisfied by demonstrating that the conduct underlying the plaintiff's claim fits into a category of protected activity set forth in section 425.16, subdivision (e). [Citation.]" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 489, fn. omitted (*Castleman*).)

"If the court finds the defendant's threshold showing has been made, the burden shifts to the plaintiff to produce evidence establishing a probability of prevailing on the cause of action. [Citation.] To meet this burden, the plaintiff must plead and substantiate a legally cognizable claim for relief. [Citation.] '"Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient

---

[6] Sturbaum objected to portions of Hui's declaration. She also objected to Yu's deposition transcript, claiming it did not comply with section 2025.210, subdivision (b), which allows a plaintiff to serve a deposition notice without leave of court only after "service of the summons on, or appearance by, any defendant. . . ." Sturbaum argued she had not been served with the summons and complaint, had not appeared in the action, and was not present at Yu's deposition, all of which prevented her from having an opportunity "to object or otherwise participate." The court assumed the deposition testimony was admissible and the parties do not argue otherwise on appeal.

8

prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"'" [Citation.]" (*Castleman, supra,* 216 Cal.App.4th at p. 490.)

"Only a '"'minimum level of legal sufficiency and triability'"' is needed to satisfy the second prong of the anti-SLAPP statute. [Citation.] The evidence favorable to the plaintiff is accepted as true, while the defendant's evidence is evaluated to determine if it defeats the plaintiff's claim as a matter of law, e.g., on grounds of privilege or immunity. [Citation.] The motion will not be granted unless both prongs of the statute are established; the plaintiff's cause of action must arise from protected speech or petitioning and lack even a minimal degree of merit. [Citation.]" (*Castleman, supra,* 216 Cal.App.4th at p. 490.) We review an order on an anti-SLAPP motion de novo: "we engage in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens." (*Ibid.*)

I.
### *Sturbaum Met Her Burden of Demonstrating the Complaint Arises From Protected Activity*

Dr. Hui does not challenge the court's finding that Sturbaum's communications with the DOI arise from protected activity. (See *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 104 (*Mann*) [defendants' reports to governmental agencies constituted petitioning activity protected under section 425.16, subdivision (e)(2); *Dickens v. Provident Life & Accident Ins. Co.* (2004) 117 Cal.App.4th 705, 714, 716 & fn. 7 ["defendant's alleged participation in procuring a criminal prosecution against a plaintiff falls within the ambit of the anti-SLAPP statute" and noting "Insurance Code section 1871 et seq. requires an insurer to report fraud to the public authorities"].) Instead, Dr. Hui contends his complaint was not subject to an anti-SLAPP motion because Sturbaum's conversation with Yu does not constitute protected activity under section 425.16, subdivision (e). Sturbaum argues her statements to Yu constitute "conduct in furtherance of the . . . constitutional right of free speech in connection with . . . an issue of public interest." (§ 425.16, subd. (e)(4).)

9

"A claim is subject to the anti-SLAPP statute if it arises from one of the four categories of protected activity set forth in section 425.16, subdivision (e). [Citation.]" (*Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 693 (*Summit Bank*).) One of these categories is section 425.16, subdivision (e)(4), which describes an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" as including "conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest."

In the "factual background" allegations of the operative complaint, Dr. Hui alleged defendants told personal injury attorneys in the area "not to send their clients to [him] because various insurance companies and/or the DOI were going to put [him] out of business for the improper acts falsely ascribed to [him]." Dr. Hui's third cause of action for slander alleged defendants made defamatory and false statements about him "to the DOI, insurance companies and personal injury attorneys in the area." Dr. Hui alleged defendants stated he "was running a fraudulent chiropractic practice, conducted intentional overcharges for services, engaged in fraudulent or improper billing, and conducted unnecessary and/or unauthorized treatments." The complaint does not allege Sturbaum made any statements to personal injury attorneys or to third parties about his prior license suspension, nor does it allege Sturbaum made any statements about Dr. Hui's "sexual misconduct."

In opposition to the anti-SLAPP motion, Dr. Hui relied on his declaration and on Yu's deposition testimony. In her deposition, Yu testified Sturbaum stated "the case was not worth money because . . . this was a small impact matter. So she . . . questioned [ ] the medical treatment." Sturbaum also "may have" mentioned "that the billing could have been fraudulently billed." In addition, Sturbaum stated the billings were "excessive because of the type of impact" in the car accident, said the billings "could be fraudulent[,]" and "mentioned that she [ ] made a complaint or [was] going to make a complaint [about] Dr. Hui." Yu thought Sturbaum "may have suggested that we

10

shouldn't have any business to do with Dr. Hui."[7] In his declaration, Dr. Hui stated he learned an insurance adjuster told National Legal Associates "not to continue doing business with [his] practice and to stop sending referrals to Pine Street [ ] because of fraudulent billing and sexual misconduct."

We must determine whether Sturbaum's statements to Yu were made "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) "Section 425.16 does not define 'public interest'" but courts have construed the phrase "'broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.]" (*Summit Bank, supra,* 206 Cal.App.4th at pp. 693, 695 [noting the "exceedingly 'expansive interpretation of the phrase "issue of public interest"'"].) In this vein, several courts have defined an "issue of public interest" as "'*any issue in which the public is interested.*'" (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 465 (*Hecimovich*), quoting *Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 716.) In addition, courts considering "the public interest requirement . . . have emphasized that the public interest may extend to statements about conduct between private individuals." (*Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1145.)

"A matter of ""public interest should be something of concern to a substantial number of people. [Citation.] . . . [T]here should be some degree of closeness between the challenged statements and the asserted public interest [citation]. . . . '[T]he focus of the speaker's conduct should be the public interest. . . .'" [Citation.]" (*Hecimovich, supra,* 203 Cal.App.4th at p. 465.) Here, the business of insurance, and the issue of insurance fraud, impact most consumers of health insurance and are undoubtedly of concern to a substantial number of people. It is for this reason, and others, that the State of California heavily regulates the insurance industry. (See *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 831 [noting, in dicta, that the "business of insurance" is a matter of public interest]; *State of California ex rel. Nee v.*

---

[7] Yu was not sure whether Sturbaum "actually said" that "[Dr.] Hui [ ] had misconduct or some sort of complaint."

11

*Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 448 [discussing legislation designed to prevent insurance fraud].)  Dr. Hui does not argue otherwise.

Instead, he claims Sturbaum's statements to Yu did not concern an issue of public interest because they were not made in the context of an ongoing controversy.  To support this argument, Dr. Hui relies on *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107 (*Du Charme*), where the court held "to satisfy the . . . [issue] of public interest requirement . . . in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Id.* at p. 119, fn. omitted.)

In *Du Charme*, a union local posted a notice on its web site informing members that a former business manager had been removed for mismanagement.  The notice also assured members the local's business would continue to run smoothly.  (*Du Charme, supra,* 110 Cal.App.4th at pp. 113-114.)  The *Du Charme* court concluded the posting was not protected under section 425.16, subdivision (e)(3) because it was "unconnected to any discussion, debate or controversy." (*Id.* at p. 118.)  As the court observed, "[the manager's] termination was a fait accompli; its propriety was no longer at issue.  Members of the local were not being urged to take any position on the matter.  In fact, *no* action on their part was called for or contemplated.  To grant protection to mere informational statements, in this context, would in no way further the statute's purpose of encouraging *participation* in matters of public significance [citation]." (*Ibid.*)

*Du Charme* does not assist Dr. Hui for at least two reasons.  First, the *Du Charme* rule applies "in cases where the issue is not of interest to the public at large" and here, there is widespread interest in curbing insurance fraud. (*Du Charme, supra,* 110 Cal.App.4th at p. 119.)  Second, and assuming for the sake of argument *Du Charme* applies, this case is distinguishable.  Here, Sturbaum was not merely providing informational statements about a previously-resolved issue.  When Sturbaum spoke to

12

Yu, the NICB was investigating Dr. Hui and Frank Kim for "potential fraudulent activity" — including fraudulent billing and performing unnecessary and unauthorized treatments — and, as a result, Sturbaum's comments occurred in the context of an ongoing controversy.  (See *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 738 [accusations against a current local union official were of public interest]; *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 383 [broadly construing "'ongoing controversy' . . . to safeguard the valid exercise of protected activity and further the statute's purpose of encouraging participation in matters of public significance"].)

Dr. Hui also contends Sturbaum's statements do not concern an "issue of public interest" under section 425.16, subdivision (e)(4) because they were not "sufficiently connected to an advancement of discussion on the general topic of combating insurance fraud."  We disagree.  During her conversation with Yu, Sturbaum questioned the treatment Dr. Hui provided: she opined the treatment was excessive and that the billings "could be fraudulent."  She also told Yu she had, or planned to, notify the DOI about Dr. Hui, likely in accordance with her duty under Insurance Code section 1872.4, subdivision (a) to report suspected fraud to the DOI.  In her deposition, Yu testified her conversation with Sturbaum was "unusual" because Sturbaum's comments concerned the way Dr. Hui managed his business.  As a result, we conclude there was a sufficient "degree of closeness between the challenged statements and the asserted public interest" of preventing insurance fraud.  (*Hecimovich, supra,* 203 Cal.App.4th at p. 465.)  The conversation between Sturbaum and Yu went beyond "parochial issues concerning a private dispute" about an insurance claim and implicitly dealt with the issue of insurance fraud.  (See *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1367 [Yelp review criticizing dentist and discussing use of silver amalgam raised issues of public interest].)[8]

---

[8]  That Sturbaum purportedly made "false allegations of sexual misconduct" during her conversation with Yu does not alter our conclusion because those statements are not alleged in the operative pleading.  The charged conduct underlying the slander cause of action was that Sturbaum stated Dr. Hui: (1) ran "a fraudulent chiropractic practice;" (2) "conducted intentional overcharges for services;" (3) "engaged in fraudulent or improper billing;" and (4) "conducted unnecessary and/or unauthorized treatments."  The

13

Interpreting — as we must — the phrase "issue of public interest" broadly, we conclude under the circumstances of this case Sturbaum has satisfied her burden of showing her statements to Yu are protected under section 425.16, subdivision (e)(4) because they concern an issue of public interest.

## II.
### *Dr. Hui Has Not Established a Probability of Prevailing Because The Common Interest Privilege in Section 47 Protects Sturbaum's Statements to Yu*

As noted above, the court determined Sturbaum's communications with the DOI were absolutely privileged. It also concluded Sturbaum's statements to Yu were protected by the common interest privilege codified in Section 47, subdivision (c). Dr. Hui does not challenge the court's findings with respect to Sturbaum's communications with the DOI. Instead, he contends Sturbaum's statements to "local personal injury attorneys and similar third parties" are not protected by the common interest privilege in Section 47. Accordingly, we determine whether Dr. Hui has carried his burden to establish the probability of prevailing on his slander claim. (§ 425.16, subd. (b)(1).) "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' [Citation.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720 (*Taus*).)

---

complaint is completely devoid of allegations that Sturbaum made any statements to personal injury attorneys or third parties about Dr. Hui's prior license suspension, or that she made any statements about "sexual misconduct." To be sure, a trial court determining whether the moving party has met its initial burden (to demonstrate the cause of action arises from protected activity) may consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1286 [court may refer to "declarations when making first-prong assessment under [section] 425.16"].) A party opposing an anti-SLAPP motion, however, may not interject new allegations or theories of recovery. (See *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073 [section 425.16 "makes no provision for amending the complaint once the court finds the requisite connection to First Amendment speech"].)

14

Section 47 "extends a conditional privilege against defamation to statements made without malice on subjects of mutual interests. [Citations.] This privilege is 'recognized where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest.' [Citation.] The 'interest' must be something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business or similar relationship or the defendant is protecting his own pecuniary interest. [Citation.] Rather, it is restricted to 'proprietary or narrow private interests.' [Citations.]" (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 287.) "'One authority explains the statutory interest as follows: (1) The "interest" applies to a defendant who "is protecting his own pecuniary or proprietary interest[ ]" (2) The required "relation" between the parties to the communication is a contractual, business or similar relationship, . . . (3) The "request" referred to must have been in the course of a business or professional relationship. [Citation].' [Citation.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 914 (*Kashian*).) "'The defendant has the initial burden of showing the allegedly defamatory statement was made on a privileged occasion, whereupon the burden shifts to the plaintiff to show the defendant made the statement with malice. [Citation.] The existence of the privilege is ordinarily a question of law for the court. [Citations.]'" (*Mann, supra,* 120 Cal.App.4th at p. 108.)

Dr. Hui contends the court erred by applying the common interest privilege to Sturbaum's statements to Yu. We disagree. Sturbaum's employer, Federated, shared a business relationship with Kim, the attorney retained by claimants. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 440 ["[p]arties in a business or contractual relationship have the requisite 'common interest' for the privilege to apply"].) In addition, Sturbaum's statements were "reasonably calculated to protect or further a common interest[.]" (*Williams v. Taylor* (1982) 129 Cal.App.3d 745, 752 (*Williams*).)

During their conversation, Sturbaum "may have" told Yu the claim "could have been fraudulently billed" and "may have" mentioned the billing "could be fraudulent."[9] She also "may have suggested that [Kim] shouldn't have any business to do with [Dr.] Hui." If Dr. Hui was engaging in fraudulent or unethical activity, it was important for Sturbaum to notify those with whom Dr. Hui did business and who were affected by the improprieties, particularly Kim. In addition, Sturbaum had a direct and immediate concern in protecting Federated's interest in settling meritorious claims. (See *Williams, supra,* 129 Cal.App.3d at p. 752 [privilege applied where defendant automobile shop made, to claims adjuster with whom body shop did business, statements concerning plaintiff body shop manager's termination for irregularities in records concerning work performed].) Assuming it occurred, Sturbaum's suggestion that Kim's firm "should stop doing business with Dr. Hui" was not extraneous or irrelevant to protecting Federated's pecuniary interests and its business relationship with National Legal Associates. (*Kashian, supra,* 98 Cal.App.4th at p. 914.) The same is true with respect to Sturbaum's purported comment that "[Dr.] Hui [ ] had misconduct or some sort of complaint . . . that [he] should have stopped seeing female patient[s]." Yu was "not sure if [Sturbaum] actually said that . . . specifically." Assuming it occurred, this statement was made in the course of Federated's business or professional relationship with National Legal Associates. (*Ibid.*)

We are not persuaded by Dr. Hui's reliance on a portion of the opinion in *Mann*, where the court determined the common interest privilege did not apply to statements defendants made to customers of a competing company, Water Systems Support Inc. (WSSI). (*Mann, supra,* 120 Cal.App.4th at p. 109.) The *Mann* court rejected the

---

[9]     It is "doubtful" Sturbaum's comments about Dr. Hui's billing "properly could be viewed *as a statement of fact* (which could support a defamation action), rather than *an expression of opinion* (which cannot)." (*Taus, supra,* 40 Cal.4th at p. 720.) The other statements at issue — that Dr. Hui had been the subject of "misconduct or some sort of complaint" requiring him to stop seeing female patients and that Sturbaum had made, or would make, a complaint to the DOI — are likely not actionable because they are true. Truth is a complete defense to a slander claim. (*Raghavan v. Boeing Co.* (2005) 133 Cal.App.4th 1120, 1132.)

16

defendants' claim that their statements were privileged under Section 47, subdivision (c), explaining: "Defendants presented no evidence showing they had any type of relationship with WSSI's customers or that WSSI's customers requested the information. Because defendants and WSSI are business competitors, it is not reasonable to assume that the motive of the communication was innocent; rather, it appears defendants' only interest was to gain WSSI's customers as their own. If we were to accept defendants' unsupported argument, business competitors would be free to publish defamatory statements about the business practices of a rival to its rival's customers by merely contending the customers were 'interested' in the subject matter of the communication." (*Id.* at p. 109.)

Here and in contrast to *Mann*, Federated shared a business relationship with Kim. In addition, Yu testified her employer, Kim*, directed* her to call Sturbaum to "settle" the claim and "obtain the necessary documents to resolve" it, suggesting Yu asked for information about Federated's position on the claim and any impediments to securing payment of the outstanding bill. According to Yu, Sturbaum explained why the claim "was not worth money" and questioned the treatment Dr. Hui provided. This is not a situation like the one in *Mann*, where one company disparaged its competitor. Here, Sturbaum told Yu the claim "*could* have been fraudulently billed" and was "excessive and *could* be fraudulent." (Italics added.) Both Sturbaum and Kim shared a common interest in resolving the claim and Sturbaum's comments were reasonably calculated to further that interest.

Having established the statements at issue are privileged, Dr. Hui bears the burden of showing the statements were made with malice. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1208.) "[M]alice," within the meaning of Section 47, subdivision (c), is "'established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiffs rights. . . .'" (See *Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370, quoting *Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 413.) Dr. Hui

17

has failed to present evidence of malice.  Nothing in Dr. Hui's declaration or in Yu's deposition transcript remotely suggests Sturbaum's conversation with Yu was "motivated by hatred or ill will" or that she acted in "reckless disregard" of Dr. Hui's rights.  A party's "bare assertion" that statements made are false does not make them so, "much less establish" they were made maliciously.  (*Kashian, supra,* 98 Cal.App.4th at p. 932.)

## DISPOSITION

The trial court's order granting the anti-SLAPP motion (Code Civ. Proc., § 425.16) is affirmed.  Sturbaum is awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                    _____

                                    Jones, P.J.

We concur:

_____

Simons, J.

_____

Needham, J.

18

A135597

A135597 Superior Court of the County of San Francisco, No. CGC10504968, Harold E. Kahn, Presiding Judge.

Miller Barondess, LLP, Erik S. Syverson and Steven T. Gebelin for Plaintiff and Appellant.

Murchison & Cumming, Bryan M. Weiss and Valerie H. Jonas for Defendant and Respondent.

A135597