Filed 12/2/15  Jones v. Badagliacco-Cabrera CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LAURA JONES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TERRI BADAGLIACCO-CABRERA et al.,<br><br>    Defendants and Respondents. | D066359<br><br><br>(Super. Ct. No. 37-2012-00057375-CU-OE-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Williams Iagmin and Jon R. Williams, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Marilyn R. Moriarty and Julie R. Dann, for Defendants and Respondents.

INTRODUCTION

Laura Jones appeals from a summary judgment in favor of Terri Badagliacco-Cabrera and Palomar Health on Jones's claims for breach of the implied covenant of good

faith and fair dealing, defamation, negligent misrepresentation, and violation of civil rights. Jones contends we must reverse the judgment because, for numerous reasons, the trial court improperly found there were no triable issues of material fact as to any of her causes of action. We disagree and affirm the judgment.

BACKGROUND

Palomar Health hired Jones as a full-time registered nurse in June 2008. Her employment was governed by a collective bargaining agreement between Palomar Health and the California Nurses Association (association). Article 3.A.8 of the collective bargaining agreement provided: "Subject to the provisions contained in this Agreement and the laws and regulations governing patient care and the practice of nursing, [Palomar Health] has the right to operate its business, which includes the exclusive right to determine, change, discontinue, alter, or modify in whole or in part, temporarily or permanently, any of the following: [¶] . . . [¶] Reasonable standards of performance, and whether any employee meets such standards." Article 6.A of the collective bargaining agreement provided: "A Registered Nurse who has successfully completed the probationary period may only be disciplined or discharged for just cause."

On January 16, 2012, at around 8:30 a.m., while Jones was working in Palomar Health's trauma unit, she received test results indicating one of her patients had a critically low potassium level. Based on the patient's potassium level, a standing physician's order (potassium protocol) required the administration of potassium to the patient. Jones knew from the patient's test results and the potassium protocol, she had to administer potassium to the patient. However, by 9:45 a.m., she still had not

2

administered the potassium. According to her, she was in the process of administering the potassium when Cabrera, also a registered nurse, ordered her to go on a break. She had not administered potassium earlier because she had been discussing the patient with the hospitalist, following the hospitalist's order to administer additional fluids, locating the potassium protocol, and then changing the patient's intravenous lines to prevent the potassium from being administered with incompatible medicines.

Before Jones went on her break, she did not inform Cabrera the patient needed potassium. However, while Jones was on her break, Cabrera determined both that the patient needed potassium and that Jones had not administered any. Consequently, Cabrera administered potassium to the patient and then reported the matter to her supervisors.

Palomar Health commenced an investigation into Jones's failure to timely administer potassium to the patient. Three days after the incident, while the investigation was pending, Jones accessed the patient's medical record and made changes erroneously indicating she had administered potassium to the patient prior to her break. Specifically, she changed the patient's medical record to indicate she administered potassium to the patient at 8:15 a.m., which was before she received the test results showing the patient's need for potassium. According to Jones, she had accessed the patient's medical record to correct charting errors she made on January 17 and had mistakenly and inaccurately changed the patient's records for January 16.

Palomar Health's disciplinary guidelines permit Palomar Health to take disciplinary action against a nurse if the nurse fails to meet Palomar Health's standards of

3

performance.  Among the grounds for discipline stated in the guidelines are falsification of medical records and unsatisfactory work performance or conduct, including neglect of duty.

A week after the incident Jones and an association representative met with Palomar Health's director of critical care and telemetry (director).  They discussed Palomar Health's concerns regarding the patient's care and the false information added to the patient's medical record.  Two days later, Palomar Health sent Jones a written notice of intent to terminate her employment (termination notice).

Six days after Palomar Health sent the termination notice, Jones and an association representative attended a pretermination, or *Skelly*, hearing.  (See *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 215 [holding before a public employee may be discharged, the public employer must accord the public employee certain procedural rights, including the right to respond orally or in writing to the person authorizing the discharge].)  Jones submitted a written response to the charges, explaining why she had not administered the potassium prior to her break and admitting her charting was inaccurate.

Following the *Skelly* hearing, Palomar Health's interim manager of critical care and telemetry (interim manager) provided Jones with written notice of its pretermination response.  This document informed Jones she would be discharged effective February 16, 2012.  The document also informed her the grounds for discharge included her failure to follow Palomar Health's adult inpatient care practice standards and her violation of

4

Palomar Health's disciplinary guidelines. Palomar Health subsequently reported Jones's discharge to the state Board of Registered Nursing (Board).[1]

The day after Jones's discharge became effective, the association filed a grievance on her behalf alleging Palomar Health discharged her without just cause. However, the association declined to proceed with the grievance until the outcome of any Board proceedings.

Notwithstanding the pendency of her grievance and the Board proceedings, in September 2012, Jones filed a lawsuit against Cabrera and Palomar Health. Her operative second amended complaint (complaint) alleged causes of action for defamation per se, libel, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and deprivation of property interest in violation of civil rights. The first three causes of action are alleged against both Cabrera and Palomar Health. The last two causes of action are alleged against Palomar Health only.

Palomar Health and Cabrera moved for summary judgment or, alternatively, summary adjudication on the grounds Jones's entire action was barred by the exhaustion of administrative remedies doctrine and she otherwise could not establish the necessary

---

[1] There were other instances during Jones's employment when Palomar Health addressed performance deficiencies with her. In February 2009 Palomar Health placed her on a performance development plan because she had difficulty managing her time and was unable to provide complete and accurate assessments of her patients during multidisciplinary rounds. In April 2009 Palomar Health gave her a verbal warning for failing to follow doctor's orders to "type cross and transfuse" a patient and to obtain an electrocardiogram for a patient having chest pain. In June 2009 Palomar Health suspended her for two shifts because she failed to care for and document the care for a patient for an entire shift. Among the care she failed to provide was a "now" order to administer medication.

5

elements to prevail on any of her causes of action. After some procedural wrangling not directly relevant to this appeal, the trial court granted the motion, albeit without a detailed explanation for its determination.

While the trial court proceedings were pending, the Board filed an accusation alleging Jones engaged in unprofessional, incompetent conduct by failing to immediately administer potassium to the patient after learning the patient's already low potassium levels had dropped. While this appeal was pending, Jones entered into a stipulated settlement with the Board. As part of the settlement, and solely for purposes of the Board proceedings, she admitted the truth of the allegations in the accusation. Consequently, and also as part of the settlement, the Board issued a letter publicly reproving her. We granted Palomar Health and Cabrera's motion to take judicial notice of the Board's actions, but not the truth of any factual findings underlying them. (Evid. Code, §§ 452, subds. (c) & (h), 459, subd. (a); Cal. Rules of Court, rule 8.252(a); *Steed v. Department of Consumer Affairs* (2012) 204 Cal.App.4th 112, 120-122.)

DISCUSSION

"Summary judgment is properly granted when the papers show there is no triable issue as to any material fact, and the moving party is entitled to judgment as a matter of law. [Citation.] When the defendant is the moving party, he must show either that (1) one or more elements of a cause of action cannot be established, or (2) there is a complete defense. [Citation.] Once that burden is met, the burden shifts to the plaintiff to show the existence of a triable issue of fact with respect to that cause of action or defense. [Citation.] We review the trial court's decision to grant defendant summary judgment de

6

novo. We review the ruling, not the rationale." (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 (*Silva*), fn. omitted.)

I

*Breach of Implied Covenant of Good Faith Dealing*

Jones's complaint alleged Palomar Health breached the implied covenant of good faith and fair dealing inherent in the collective bargaining agreement by discharging her without just cause.[2] " 'Good cause' in the context of implied employment contracts is defined as: 'fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond.' [Citation.] 'Three factual determinations are relevant to the question of employer liability: (1) did the employer act with good faith in making the decision to terminate; (2) did the decision follow an investigation that was appropriate under the circumstances; and (3) did the employer have reasonable grounds

_____

[2]     The complaint also alleged Palomar Health breached the implied covenant of good faith and fair dealing by misrepresenting to others Jones "was incompetent, uncaring and indifferent about patient care." While the record shows the collective bargaining agreement contains a provision precluding discharge except for just cause, the record does not show the agreement contains a provision addressing Palomar Health's ability to report performance deficiencies to others. "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot ' "be endowed with an existence independent of its contractual underpinnings." ' [Citations.] It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 349-350.)

7

for believing the employee had engaged in the misconduct.' " (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 872-873, citing *Cotran v. Rollins Hudig Hall Internat., Inc*. (1998) 17 Cal.4th 93, 107-108 and *Silva*, *supra*, 65 Cal.App.4th at p. 264.) If the facts are undisputed or admit of only one conclusion, the question of an employer's liability may be decided by a motion for summary judgment. (*Silva*, at p. 264; *Binder v. Aetna Life Ins. Co*. (1999) 75 Cal.App.4th 832, 841.)

Regarding the first factual determination, there is no evidence Palomar Health had a wrongful motive in determining there was good cause for discharging Jones. While Jones asserts Cabrera acted out of jealously or personal animus, there is no evidence Cabrera had an investigative or decision-making role in Jones's discharge. There is also no evidence any of the people with investigative or decision-making roles acted out of personal animus.

Regarding the second factual determination, "investigative fairness contemplates listening to both sides and providing employees a fair opportunity to present their position and to correct or contradict relevant statements prejudicial to their case, without the procedural formalities of a trial." (*Silva*, *supra*, 65 Cal.App.4th at p. 264.) On this point, Palomar Health provided evidence showing the director and interim manager investigated Jones's conduct. As part of their investigation, they interviewed Jones, interviewed Cabrera, interviewed the charge nurse, reviewed the patient's chart, and reviewed the medication dispensing system report for the day of the incident. In addition, the matter was reviewed by the chief nursing officer and a clinical nurse specialist. With the assistance of an association representative, Jones presented her version of events to

8

the interim manager during the investigation and to the director at the *Skelly* hearing. She also submitted written responses to the grounds for discharge identified in the termination notice. The interim manager formally replied to Jones's written responses in the letter confirming her discharge. This process met the requisite fairness requirements and "was appropriate given that it was conducted 'under the exigencies of the workaday world and without benefit of the slow-moving machinery of a contested trial.' " (*Silva*, at p. 275.)

Regarding the third factual determination, there is no evidence Palomar Health's reasons for discharging Jones were trivial, arbitrary, unrelated to business needs or pretextual. Indeed, the fact the Board investigated Jones's conduct and filed an accusation against her establishes the conduct was genuinely concerning.

There is also no evidence Palomar Health's decision to discharge Jones for violating its adult inpatient care practice standards was an unreasoned conclusion unsupported by substantial evidence. Jones does not dispute she delayed in administering potassium to the patient and altered the patient's medical record in a manner erroneously making it appear the delay did not occur. She also does not dispute the patient's potassium level was critically low and potentially life threatening, or that Palomar Health's adult inpatient care practice standards required "interventions [to be] delivered in a manner that minimizes complications and life-threatening situations." Rather, in her view, she acted reasonably under the circumstances and the patient did not suffer any lasting harm from the delay in administering potassium. However, the fact she and Palomar Health disagree in their conclusions is not sufficient evidence to create a triable issue about whether Palomar Health's lacked reasonable grounds for its decision. (See,

9

e.g., *Silva*, *supra*, 65 Cal.App.4th at p. 277 [employee's denial of wrongdoing does not raise a triable issue regarding the reasonableness of employer's discharge decision].)

## II

### *Defamation and Libel Causes of Action*

" 'The tort of defamation "involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." ' (*Hui v. Sturbaum* (2014) 222 Cal.App.4th 1109, 1118, citing *Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) Jones's defamation and libel causes of action are based on Palomar Health's and Cabrera's alleged publication of false and defamatory facts about Jones's professional competence to third persons in the workplace and the community. The only evidence in the record of publications critical of Jones are Cabrera's report about Jones's care of the patient to Palomar Health and Palomar Health's report about Jones's discharge to the Board. Palomar Health and Cabrera contend these publications are not actionable because Palomar Health's publication is absolutely privileged and Cabrera's publication is conditionally privileged. We agree.

### A

A publication is absolutely privileged if, among other circumstances, it is made in an official proceeding authorized by law or during the initiation or course of any other proceeding authorized by law and reviewable by writ of mandate. (Civ. Code, § 47, subd. (b); *Moore v. Conliffe* (1994) 7 Cal.4th 634, 640-641; *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1546.) The privilege covers various communications intended to instigate official investigation into wrongdoing and

10

applies to all torts except for malicious prosecution. (*Hansen v. Department of Corrections & Rehabilitation*, *supra*, at pp. 1546-1547.) Palomar Health's reporting of the reasons for Jones's discharge to the Board is covered by the absolute privilege because the Board is responsible for disciplining the registered nurses it licenses, Palomar Health's report instigated an official investigation by the Board into Jones's conduct, and the Board's decision to discipline a registered nurse's license is reviewable by writ of mandate.[3] (Bus. & Prof. Code, §§ 2750, 2761; Gov. Code, §§ 11501, subd. (a), 11523; see, e.g. *Lee v. Board of Registered Nursing* (2012) 209 Cal.App.4th 793, 796; *Hansen v. Board of Registered Nursing* (2012) 208 Cal.App.4th 664, 669.)

B

A publication is conditionally privileged if it was made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (Civ. Code, § 47, subd. (c); *Hui v. Sturbaum*, *supra*, 222 Cal.App.4th at p. 1112, fn. 2.) " ' "The existence of the privilege is ordinarily a question of law for the court." ' " (*Hui v. Sturbaum*, *supra*, at p. 1119.)

---

3    Although not raised below, Palomar Health correctly points out on appeal it is also immune from liability under Business and Professions Code section 2318, which provides in part: [A]ny person, including, but not limited to, a … hospital … who provides information to the board … indicating that a board licensee may be guilty of unprofessional conduct … shall not be liable for any damages in any civil action on account of the communication of that information to the board."

11

As Cabrera and Palomar Health share an employment relationship, they had the requisite common interest for the privilege to apply. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 440 ["[p]arties in a business or contractual relationship have the requisite 'common interest' for the privilege to apply"]; accord, *Hui v. Sturbaum*, *supra*, 222 Cal.App.4th at p. 1119.) Thus, the only issue is whether Cabrera acted with malice. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 915 [if malice is shown the common interest privilege is not simply overcome, it never applied in the first instance].)

" ' " 'The malice necessary to defeat a qualified privilege is "actual malice" which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds, for belief in the truth of the publication and thereafter acted in reckless disregard of the plaintiff's rights [citations].' " ' " (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 288, citing *Taus v. Loftus*, *supra*, 40 Cal.4th at pp. 721-722.) Here, there is no evidence Cabrera lacked reasonable grounds for believing Jones delayed administering potassium to the patient. Indeed, this fact is undisputed. Nonetheless, Jones asserts Cabrera maliciously reported the delay because Cabrera disliked Jones, was jealous of Jones's recently acquired advanced trauma nurse certificate, and was covering up for her own failure to provide the patient appropriate care. "To defeat summary judgment, [a plaintiff] cannot rely on 'speculation, conjecture, imagination, or guesswork.' " (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 418.) As Jones's assertions about Cabrera's motivation are no more than speculation on Jones's part, they are insufficient to establish a triable issue of material fact. (*Id.* at p. 415 [a plaintiff must

12

produce substantial responsive evidence to establish a triable issue of material fact and evidence that gives rise to no more than mere speculation cannot be regarded as substantial].)  Accordingly, Jones cannot establish her causes of action for defamation and libel and Palomar Health and Cabrera are entitled to judgment on these causes of action as a matter of law.

III

*Negligent Misrepresentation Causes of Action*

"The elements of negligent misrepresentation are (1) the defendant made a false representation; (2) without reasonable grounds for believing it to be true; (3) with the intent to deceive the plaintiff; (4) justifiable reliance on the representation; and (5) resulting harm." (*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 308.)

Jones bases her negligent misrepresentation cause of action on allegations Palomar Health and Cabrera expressly and negligently misrepresented that her employment could only be terminated for just cause and that she must utilize an association representative to pursue a grievance under the collective bargaining agreement between Palomar Health and the association.[4]

---

4    Jones also bases her cause of action on allegations Palomar Health and Cabrera made several implied negligent misrepresentations; however, a negligent misrepresentation claim cannot be based on an implied representation. (*Lopez v. Nissan North America, Inc.* (2011) 201 Cal.App.4th 572, 596; *Diediker v. Peelle Fin. Corp.* (1997) 60 Cal.App.4th 288, 297-298; *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282, 291, fn. 6; *Wilson v. Century 21 Great Western Realty* (1993) 15 Cal.App.4th 298, 306; *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 304.)

As to the first alleged misrepresentation, that Jones could not be discharged except for just cause, there is no evidence this representation was false. The collective bargaining agreement expressly provides, "A Registered Nurse who has successfully completed the probationary period may only be disciplined or discharged for just cause." While the parties dispute whether Palomar Health actually had good cause to discharge Jones, the existence of this dispute is not tantamount to evidence the representation was false.

As to the second alleged misrepresentation, that Jones had to utilize an association representative to pursue a grievance, there is no evidence this representation, if false, was made without reasonable grounds for believing it to be true, particularly in the context of a dispute over an employee's discharge. While the collective bargaining agreement's grievance procedure indicates the procedure may be initiated and moved from one step to another by a registered nurse or the association, the agreement contemplates the procedure will be shepherded by the association and a "designated Nurse Representative," as the procedure requires Palomar Health to provide copies of all written responses and decisions to them. Moreover, the agreement's arbitration procedure, which supplements the grievance procedure by providing for an evidentiary hearing for grievances not settled by the grievance procedure, may only be initiated by the association. Thus, when Jones asked a Palomar Health human resources employee whether she could continue the grievance process without the association's involvement, the human resources employee had a reasonable basis for informing her she could not. As Jones cannot establish the alleged misrepresentations underlying her negligent

14

misrepresentation claim were false and made without reasonable grounds for believing them to be true, she cannot establish her cause of action for negligent misrepresentation and Palomar Health and Cabrera are entitled to judgment on this cause of action as a matter of law.

IV

*Denial of Due Process Cause of Action*

The parties do not dispute Jones had a constitutionally protected property interest in continued employment with Palomar Health. (See *Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 538-539 [105 S.Ct. 1487, 1491-1492, 84 L.Ed.2d 494]; *Skelly*, *supra*, 15 Cal.3d at pp. 207-208.) Jones's denial of due process cause of action alleges Palomar Health violated the federal Constitution and 42 U.S.C. section 1983 by depriving her of this property interest without due process of law.

To the extent her cause of action is based on an alleged absence of good cause to discharge her, the cause of action fails for the reasons stated in part I, *ante*. To the extent her cause of action is based on an alleged failure to provide her with preremoval safeguards, the undisputed evidence shows Palomar Health provided her with notice it intended to discharge her, the reasons it intended to discharge her, a copy of the charges and materials upon which it based its decision, an opportunity to respond both orally and in writing to the person who made the discharge decision, and a written reply to her response. These preremoval safeguards satisfy due process requirements. (*Skelly*, *supra*, 15 Cal.3d at p. 215.) Contrary to Jones's assertion, the fact the person who made the discharge decision may have participated in the underlying investigation does not amount

15

to a deprivation of due process. "[A]llowing a single decisionmaker to undertake both the investigative and the adjudicative functions in an administrative proceeding does not, by itself, constitute a denial of due process." (*Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 581-582, citing *Griggs v. Board of Trustees* (1964) 61 Cal.2d 93, 98; *Binkley v. City of Long Beach* (1993) 16 Cal.App.4th 1795, 1811.)

Finally, to the extent her cause of action is based on Palomar Health's failure to provide her with a posttermination evidentiary hearing, the evidence shows a posttermination evidentiary hearing was available to Jones as part of the grievance procedures contained in the collective bargaining agreement between Palomar Health and the association. (*Armstrong v. Meyers* (9th Cir. 1992) 964 F.2d 948, 950 ["a public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement"]; *Jackson v. Temple University of Commonwealth System of Higher Education* (3d Cir. 1983) 721 F.2d 931, 933 (*Jackson*) [posttermination arbitration available under a collective bargaining agreement provides adequate due process safeguard].) The evidence also shows the association initiated a posttermination grievance on Jones's behalf; however, the association decided not to actively pursue the grievance while the Board investigated Jones's conduct. This decision does not constitute a due process violation by Palomar Health absent evidence Palomar Health played a role in making the decision. (*Jackson*, *supra*, at p. 933 [employer did not deprive employee of property interest in employee's job without due process where there is no evidence employer was involved in union's decision not to proceed with posttermination arbitration provided for in the collective bargaining agreement].)

16

Palomar Health's deference to the association's decision does not provide such evidence. "There is a strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes between employers and employees. Allowing individual employees to decide which claims to arbitrate would undermine that process." "Exclusive union control of the grievance process as the employees' sole representative also helps achieve one of the primary purposes of the process: [¶] A prime function of a grievance procedure is to secure uniformity in interpreting the agreement and building up a 'law of the plant' with respect to matters not spelled out in the agreement . . . . Vesting the Union with control of all grievances increases the likelihood of uniformity and reduces 'a potential source of competitions and discriminations that could be destructive of the entire structure of labor relations in the plant.' " (*Armstrong v. Meyers*, *supra*, 964 F.2d at p. 951.) Accordingly, Jones cannot establish a cause of action for violation of due process.

Given our conclusions, we need not address Palomar Health's contentions Jones's complaint is barred by her failure to exhaust her administrative remedies or that Palomar Health's and Cabrera's alleged actions are immune from liability under various Government Code provisions. We also need not address Jones's contention the trial court provide an inadequate decision for appellate review.

17

DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

McDONALD, J.