Filed 1/21/16  Darulis v. Maderas Country Club CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARK DARULIS, | D067541 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00003465-CU-WT-CTL) |
| MADERAS COUNTRY CLUB, L.P., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Mark Darulis, in pro. per., for Plaintiff and Appellant.

Finch, Thornton & Baird, P. Randolph Finch, Jr., Andrea L. Petray and M. Katy Ross for Defendants and Respondents.

I

*INTRODUCTION*

Plaintiff Mark Darulis was employed as a driver for Dynamex, a company that contracts with a third party, Edward Don & Company (Edward Don), a supplier of

nonfood items to restaurants, to deliver restaurant supplies to Edward Don's customers.

Edward Don received multiple complaints about Darulis and eventually requested that

Dynamex no longer assign Darulis to make deliveries to Edward Don's customers.

Darulis alleges that one of the complaints was made by defendant Derek Fritts, a former

employee of another defendant, Maderas Country Club, L.P. (Maderas).  According to

Darulis, Fritts's complaints about Darulis were false.

Darulis filed this action against Fritts and his former employer, Maderas (the

Maderas defendants), as well as against Edward Don and the other complaining customers

and their employers.[1]

Darulis asserted a claim against Fritts for "defamation/slander," and asserted a

claim against Maderas for the same based on his allegation that Fritts was acting in the

course and scope of his employment with Maderas when he made the complaint against

Darulis.  The trial court sustained the Maderas defendants' demurrer to Darulis's

complaint without leave to amend, concluding that Fritts's statements about Darulis came

within the scope of the common interest privilege.  The court entered judgment in favor of

the Maderas defendants.

On appeal, Darulis, acting in propia persona, contends that the trial court erred in

sustaining the Maderas defendants' demurrer with respect to his claims against them.

Darulis argues that the common interest privilege does not apply to Fritts's statements

about him.  Darulis argues in the alternative that if this court determines that the common

---

[1]     Darulis has filed separate appeals with respect to judgments related to the other defendants in this action.

2

interest privilege does apply to Fritts's statements, he nevertheless has sufficiently alleged, or could sufficiently allege, that Fritts acted with malice, thereby extinguishing the availability of the common interest privilege.

We disagree with Darulis and determine that he has not shown that he could sufficiently allege malice to avoid the common interest privilege defeating his slander claim on demurrer. Accordingly, we affirm the judgment with respect to the Maderas defendants.

II

*FACTUAL AND PROCEDURAL BACKGROUND*[2]

Darulis filed a six count complaint against multiple defendants, including Maderas, Fritts, two other individuals, Edward Don, and Rancho Valencia Resort Management.[3]

Darulis alleges that he was a delivery driver for Dynamex. According to the complaint, Dynamex "retains a number of accounts for which [it] provide[s] delivery services . . . one of which is the 'Ed Don' account." The "Ed Don Company provides products to restaurants such as plates, glasses, napkins, etc., everything a restaurant would use in its day to day operations except the food."

In approximately 2009, Dynamex assigned "permanent driver[s]" to each of four routes it had created for the Edward Don account. Darulis was assigned to one of these

---

[2]    Because we are reviewing the trial court's ruling on a demurrer to the complaint, our recitation of the factual background of this matter is derived from the allegations set forth in that pleading.

[3]    The operative complaint is the "Amended Complaint," filed June 25, 2014.

3

routes, and he would "do this route every Tuesday and Thursday," making approximately 25 deliveries per week. In 2010, Darulis was assigned an additional Edward Don route, which meant that he was making approximately "30 stops a week for Ed Don."

In April 2011, Edward Don "received a complaint from a receiver at the Grand Del Mar Country Club" stating that Darulis "did not provide good service" and "was rough in his deliveries." Edward Don contacted Dynamex and asked that Darulis not deliver to the Grand Del Mar Country Club again.

In March 2013, "another complaint was issued against [Darulis]." A "new receiver at the Rancho Valencia Resort" complained that Darulis was a " 'Hot Mess,' " "smelled of smoke all the time," "his truck was a total wreck and so dangerous that if you saw it on the highway you would try to stay as far away as possible," "Darulis did not have the agility to climb onto the back of his truck," and "he grumbled."

A week after this second complaint was made, "Darulis received a complaint from the [Maderas] Country Club." Darulis alleges that he was delivering a "large load of product on his cart and the load had shifted and Darulis had to hold on to it with both hands." As he "approached the delivery door," which, Darulis asserts, was "scarred with numerous contusions and partly ajar because it drags on the ground," Darulis "used his cart to push it open." According to Darulis, he did this because his hands were not free, and because "pushing delivery doors open using a cart is standard practice in the delivery world evidenced by all the contusions on this door and every other delivery door on the planet." After entering the delivery area, Darulis "encountered an individual who was just standing around and he raised his voice to Darulis stating he would appreciate it if he

4

would not do that." Although Darulis was not sure why the man was upset, Darulis "replied OK and made his delivery and left."

According to the allegations of Darulis's complaint, Darulis later learned that the individual he had encountered was Fritts, and that after the encounter, Fritts "called up Ed Don and in an extremely emotional state complained that Darulis had disrespected him and broken down/almost broke down their delivery gate."

After Edward Don received this third complaint about Darulis, someone from Edward Don called a manager at Dynamex and "ordered that Darulis be fired from the Ed Don Account." According to the relevant pleading, "[a]fter 4 years and 3 months and more than 6500 deliveries for Ed Don, Darulis was out of a job."

In the complaint, Darulis attempted to set forth a single cause of action against Fritts for "defamation/slander." Darulis alleged that Fritts "falsely accuse[d] Darulis with a crime of breaking down, almost breaking down, attempting to break down their delivery door," and asserts that the criminal statute Fritts has falsely accused him of violating is for vandalism. Darulis claimed that Fritts's "actions were negligent concerning his slander."

Darulis also attempted to set forth a single cause of action against Maderas. Darulis "claims [Maderas] is responsible for Fritts['s] actions under the doctrine of Respondeat Superior, that an employer is vicariously responsible for its employees['] torts while under the scope of employment," and he further asserts that Maderas "is liable to Darulis for negligently supervising and lack of control over Fritts."

The Maderas defendants demurred to Darulis's complaint, asserting that the communications between Fritts and representatives at Edward Don are protected by the

5

common interest privilege and therefore could not be the basis for liability. The trial court sustained the Maderas defendants' demurrer.

The court entered a judgment of dismissal as to the Maderas defendants, with prejudice. In the judgment, the trial court concluded that "Plaintiff failed to allege malice sufficient to defeat the common interest privilege" and "failed to show the manner in which the amended complaint could be amended to cure the deficient allegations."

Darulis filed a timely notice of appeal.

### III

### *DISCUSSION*

Darulis contends that the trial court erred in concluding that the common interest privilege applies to the statements that Fritts made to Edward Don. Darulis also contends that even if the trial court was correct that the common interest privilege may apply to Fritts's comments, Fritts acted with actual malice, thereby defeating the privilege. To this end, he sets forth additional allegations in his opening brief that he argues establish malice and thereby defeat the Maderas defendants' claim of privilege. On the record before us, we conclude Darulis has not done enough to plead malice.

### A. Legal Standards

This court applies the following well-established law in reviewing a trial court's order sustaining a demurrer without leave to amend: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its

6

parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## B.  Analysis

Darulis contends that the trial court erred in sustaining the Maderas defendants' demurrer on the ground that the complaint demonstrated that Fritts's communications to Edward Don were privileged as a matter of law.

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' "  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720.)  Defamation "has two forms - libel and slander."  (Civ. Code, § 44; *Brown v. Kelly Broadcasting Co*. (1989) 48 Cal.3d 711, 723.)  "Slander is defined as including 'a false and unprivileged publication, orally uttered, . . . [¶] . . . [tending] directly to injure [any person] in respect to his office, profession, trade or business. . . .' "  (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1203.)

Civil Code section 47, subdivision (c) "extends a conditional privilege against defamation to statements made without malice on subjects of mutual interests."  (*Hawran*

7

*v. Hixson* (2012) 209 Cal.App.4th 256, 287.)[4]  This privilege, often referred to as the common interest privilege, "is 'recognized where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest.' [Citation.]  The 'interest' must be something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business or similar relationship or the defendant is protecting his own pecuniary interest. [Citation.]  Rather, it is restricted to 'proprietary or narrow private interests.' " (*Ibid*.)

The allegations of the complaint are that Fritts, an employee of Maderas, complained about Darulis's conduct to an employee or employees of Edward Don. Darulis's complaint concedes that Edward Don provides nonfood supplies to its customers, one of which is Maderas.  It is thus clear that Edward Don and Maderas share a business relationship, and have a common interest in maintaining that business relationship to protect both of their pecuniary interests.  (See *King v. United Parcel Service, Inc*. (2007) 152 Cal.App.4th 426, 440 ["[p]arties in a business or contractual relationship have the requisite 'common interest' for the privilege to apply"].)  Fritts, as Maderas's employee, shares Maderas's interests.  Further, Fritts's alleged statements to Edward Don about Darulis are, on their face, " 'reasonably calculated to protect or further a common interest' " (*Williams v. Taylor* (1982) 129 Cal.App.3d 745, 752), since the

---

4    Civil Code section 47, subdivision (c) provides for a conditional privilege for communications made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

statements are related to Darulis's job performance and Fritts's displeasure with the service he observed on Darulis's part.

Given the nature of the statements on which Darulis relies for his causes of action against the Maderas defendants, as well as the allegations of the complaint that reveal the contractual business relationship between Maderas (and by extension Fritts) and Edward Don, the trial court properly concluded that Fritts's alleged complaints to Edward Don about Darulis's job performance were conditionally privileged pursuant to the common interest privilege. The court was therefore correct in sustaining the Maderas defendants' demurrer to the operative complaint.

Darulis further contends, however, that even if Fritts's statements would otherwise fall within the common interest privilege, Fritts acted with malice, thereby extinguishing any privilege. Darulis appears to believe that he sufficiently alleged malice in the operative complaint. He did not.

Malice may not be inferred from the mere fact of the communication. (*Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1558.) " '[M]alice,' within the meaning of Civil Code section 47, subdivision (c), is " ' "established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights. . . ." ' " (*Hui v. Sturbaum* (2014) 222 Cal.App.4th 1109, 1121; see *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 931 ["[N]egligence is not malice."].) " 'It is not sufficient to show that the statements . . . were inaccurate, or even unreasonable. Only willful falsity or recklessness will suffice.

9

"It is only when the negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a willful disregard for or avoidance of accuracy, that malice is shown." ' "  (*Ibid*.)

"A defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice.  [Citation.]  'A failure to investigate [citation], anger and hostility toward the plaintiff [citation], reliance upon sources known to be unreliable [citations], or known to be biased against the plaintiff [citations]—such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication.' "  (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 84-85.)  Thus, malice may be inferred where, for example, "a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call."  (*St. Amant v. Thompson* (1968) 390 U.S. 727, 732.)  However, "[t]he failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy. [Citations.]  Similarly, mere proof of ill will on the part of the publisher may likewise be insufficient."  (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 258.)

The allegations of the operative complaint are insufficient to support the conclusion that Fritts acted with malice.  Nowhere did Darulis allege with sufficient facts that Fritts was motivated by hatred or ill will towards him.  Nor did he allege facts showing that Fritts lacked reasonable grounds to believe his statements as true and acted in reckless disregard of Darulis's rights.  Further, there is no indication in the record that

he represented to the court that he could make any such allegations if given the opportunity to do so.

Here, Darulis attempts to address this omission by claiming that he could allege enough facts to give rise to malice and defeat the common interest privilege. As such, he argues that Fritts "had no good faith belief in" the allegedly defamatory statement. This simply is not enough.

In the operative complaint, Darulis alleged: "Maderas also has a duty to provide vendors with a safe area to do their work of unloading and delivery of products. This wooden delivery door at issue is damaged to the point a vendor can receive splinters by opening it by hand, and more than average force is needed to open it because it drags on the ground." Further, he admits that he pushed open the door with his cart, but not with his hand. These allegations establish, for purposes of a demurrer, that Darulis pushed open the delivery door with more than average force with his cart. Further, the allegations describe a situation in which Darulis struck the delivery door with enough force to open it as it dragged across the ground. In other words, Darulis's own allegations indicate that he did not gently or easily open the delivery door. Against this backdrop, we determine Darulis's bald assertion that Fritts did not have a good faith belief in his allegedly defamatory statement that Darulis had damaged the door is insufficient to plead the existence of malice. Moreover, Darulis's conclusory allegation in his opening brief does not explain how Fritts acted in reckless disregard of Darulis's rights. (See *Kashian v. Harriman*, *supra*, 98 Cal.App.4th at p. 931.) In short, there are no allegations in the operative complaint or any indication in Darulis's briefs here that leads us to believe that

11

he can allege that Fritts was willfully false or reckless in making the alleged defamatory statements.  (See *ibid.*)  It is also important that Darulis made no offer in the trial court that he could amend to properly allege malice.

In summary, on the record before us, we determine that Darulis has not done enough to show that he can state a valid cause of action for defamation against the Maderas defendants.  Merely offering a bald conclusion in an opening brief that Fritts did not have a good faith belief in what he said after Darulis did not argue to the superior court that he could allege facts to defeat the common interest privilege does not warrant reversal here.

## DISPOSITION

The judgment of the superior court dismissing Maderas and Fritts from this action is affirmed.  Each party is to bear his/its own costs.

HUFFMAN, Acting P. J.

I CONCUR:

NARES, J.

12

AARON, J., Concurring and Dissenting.

I concur with the majority that the trial court correctly concluded that Fritts's alleged complaints to Edward Don concerning Darulis's job performance were conditionally privileged pursuant to the common interest privilege, and that the court thus properly sustained the Maderas defendants' demurrer. However, in my view, Darulis has demonstrated that he could amend his pleading to sufficiently allege malice, which would extinguish the availability of the common interest privilege. I would therefore hold that the trial court erred in sustaining the demurrer without granting leave to amend.

A. *Legal standards*

When a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) "Public policy dictates that leave to amend be liberally granted. If there is any reasonable possibility that the plaintiff can state a cause of action, it is error to sustain a demurrer without leave to amend." (*Centex Homes v. St. Paul Fire & Marine Ins. Co.* (2015) 237 Cal.App.4th 23, 32.)

B. *Analysis*

Darulis contends that even if Fritts's statements fall within the common interest privilege, Fritts acted with malice, thereby extinguishing any privilege. Darulis appears to

believe that he sufficiently alleged malice in the operative complaint. While I would agree with the majority that the allegations of the complaint are insufficient to support the conclusion that Fritts acted with malice, in Darulis's briefing on this issue, he makes additional contentions regarding the circumstances surrounding his interaction with Fritts and Fritts's alleged statements that, if included as allegations in the complaint, would, in my view, be sufficient to allege the existence of malice. Given that Darulis offers additional allegations regarding his interaction with Fritts, and specifically, allegations from which one could infer malice on the part of Fritts, I would conclude that Darulis has sufficiently demonstrated how he could amend his complaint to properly allege that Fritts acted with malice in making the challenged statements to Edward Don representatives.[1]

Darulis demonstrated through the allegations he has set forth in his briefing how he might be able to amend his complaint if provided the opportunity. (See *Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072 [a plaintiff can making a showing as to the manner in which he could amend his complaint for the first time to a reviewing court].) For example, Darulis asserts that Fritts's statement to Edward Don was an "outright falsehood," and suggests that Fritts did not have a good faith belief that Darulis had actually done what Fritts claimed Darulis had done. Darulis further alleges that no one ever sought the cost of repairs from him, implying that the accusation that he damaged the

---

[1] The Maderas defendants' demurrer was sustained with prejudice as to Darulis's first amended complaint, demonstrating that at the time the trial court dismissed these defendants with prejudice, Darulis had had only one opportunity to amend his complaint. As a result of the trial court's sustaining of the Maderas defendants' demurrer to his amended complaint without leave to amend, Darulis was not provided any opportunity to amend in response to the deficiencies identified by the Maderas defendants' demurrer.

2

Maderas delivery gate was not based on a good faith belief that Darulis had actually caused any damage to the gate. The current complaint already includes the allegation that Fritts got "upset" and "raised his voice to Darulis," and ultimately "called up Ed Don and in an extremely emotional state" made his complaint. These allegations, together with the additional allegations that Darulis includes in his briefing on appeal, demonstrate that Darulis could amend his complaint to allege facts supporting his contention that Fritts fabricated his statements about Darulis (see *St. Amant v. Thompson*, *supra*, 390 U.S. at p. 732) and showed hostility toward Darulis (see *Christian Research Institute v. Alnor*, *supra*, 148 Cal.App.4th at p. 84). Such allegations could support an inference that the requisite malice existed. With the inclusion of these allegations, Darulis's pleading would be sufficient to state a cause of action against Fritts (and his former employer Maderas) based on purported injurious statements that were *not* conditionally privileged.

For these reasons, I would conclude that there is a reasonable possibility that the defect on which the trial court relied in sustaining the Maderas defendants' demurrer to

3

Darulis's amended complaint and entering judgment in favor of the Maderas defendants can be cured by amendment. I would therefore reverse the court's judgment in favor of the Maderas defendants.[2]

AARON, J.

---

[2] As previously stated, in reviewing a demurrer that was sustained without leave to amend, our role is simply to "decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank*, *supra*, 39 Cal.3d at p. 318.) If such a reasonable possibility exists, it is our duty to reverse to allow the plaintiff the opportunity to amend, regardless of our views of the merits of the claims. While I would reverse the court's denial of leave to amend, I do not intend to suggest that I believe the allegations against the Maderas defendants are *necessarily true*, or that Darulis's claims *could or would succeed on their merits*. Rather, I simply conclude that Darulis has demonstrated the ability to cure the deficiencies of his operative complaint with respect to these defendants on the ground raised by these defendants in their demurrer—i.e., that the statements made by Fritts about Darulis were privileged under the common interest privilege.