Filed 4/22/22  Miles v. Sedgwick Claims Management Services CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ANDREW JOHN MILES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., et al.,<br><br>    Defendants and Respondents. | B311520<br><br>Los Angeles County Super. Ct. No. 19STCV09427 |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge. Affirmed.

        Blair & Ramirez, Oscar Ramirez, Matthew P. Blair and Kirill Lavinski for Plaintiff and Appellant.

        Davis Wright Tremaine, Kelli L. Sager, Dan Laidman and Sarah Burns for Defendant and Respondent Sedgwick Claims Management Services, Inc.

Locke Lord, David A. Solitro and Steven T. Whitmer for Defendant and Respondent California Insurance Guarantee Association.

---

## INTRODUCTION

This is a defamation action related to a workers' compensation case. Plaintiff and appellant Andrew John Miles (plaintiff) is a chiropractor who treated an injured worker. Defendants and respondents are California Insurance Guarantee Association (CIGA) and Sedgwick Claims Management Services, Inc. (Sedgwick) (collectively, defendants), the workers' compensation insurer[1] and third-party claims administrator, respectively. Plaintiff sued CIGA and Sedgwick for defamation after Sedgwick sent two letters to the injured worker (as well as counsel for the worker and for CIGA) falsely stating that plaintiff had been indicted for fraud or misuse of Medicare, Medi-Cal, or the workers' compensation system.

Defendants admitted the statements about plaintiff's indictment were false but asserted the statements were privileged. Defendants moved for summary judgment under Civil Code[2] section 47, subdivision (c) (section 47(c)), which extends a conditional privilege against defamation to statements made without malice on subjects of mutual interest. Here, defendants

---

[1] CIGA is an association created by California law that is responsible for paying a portion of the insurance claims from companies that have become insolvent.

[2] All undesignated statutory references are to the Civil Code.

argued, the letters related to a matter of common interest, namely, ensuring that medical treatment provided to the injured worker would be covered under the workers' compensation insurance policy. Further, defendants explained, plaintiff's name inadvertently appeared in the letters due to a miscommunication between two Sedgwick employees. In response, plaintiff argued that the letters did not relate to any common interest because the senders and recipients were in an adversarial posture and, further, that Sedgwick's actions after it was alerted to the error created a triable issue of material fact as to whether the employees acted with a reckless disregard of plaintiff's rights.

The court agreed with defendants and granted their motions for summary judgment. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. General Background

An injured worker (the worker) filed a workers' compensation claim in April 2015. After the employer's workers' compensation carrier became insolvent, CIGA, an association created under state law, became responsible for paying the injured worker's claim. Sedgwick is a third-party claims administrator for CIGA and handled the worker's claim. Plaintiff is a chiropractor who treated the injured worker.

The worker also initiated litigation in 2015 and was represented in that litigation by Jacobson & Associates (worker's counsel). CIGA was represented in that litigation by Floyd Skeren Manukian Langevin, LLP (defense counsel).

### 2. The Indictment Letter

Sedgwick claims examiner D. Russ was assigned to handle the worker's claim. When she reviewed the claim file, Russ

3

spotted two issues that needed to be resolved. First, Russ noted that plaintiff was identified as the worker's primary treating physician. But under Labor Code section 4600, a chiropractor may only serve as a primary treating physician under limited circumstances. Accordingly, Russ prepared a computerized diary entry[3] that instructed claims assistant S. Couch to send a letter (Labor Code letter) to the worker letting him know that plaintiff could not be his primary treating physician and he should select a different provider to fill that role. The diary entry specifically identified plaintiff as the subject of the letter.

Second, Russ learned that one of the worker's other medical providers, Dr. Rosen, was no longer an approved medical provider for CIGA claims because the Department of Industrial Relations had included Dr. Rosen on a list of medical providers who had been indicted for fraud or abuse of Medicare, Medi-Cal, or the workers' compensation system. After Russ reviewed the Department of Industrial Relations website, she created a computerized diary entry instructing Couch to send several form letters to the worker, including one notifying the worker of the indictment issue (indictment letter) and another instructing him to select a new provider (follow-up letter). Although Russ intended for the indictment letter to refer to Dr. Rosen, the diary entry she created did not mention Dr. Rosen by name or otherwise identify the provider at issue. Dr. Rosen and plaintiff shared an office suite.

Couch received the two diary entries created by Russ and assumed both entries related to plaintiff. Accordingly, she

---

[3] Russ used computerized entries, called "diary entries," to assign tasks to a claims assistant for handling.

prepared the indictment letter and a follow-up letter (collectively, the two false letters) stating incorrectly that plaintiff (not Dr. Rosen) was listed on the website of the Department of Industrial Relations as a provider who had been indicted for fraud or abuse of Medicare, Medi-Cal, or the workers' compensation system and that the worker would need to choose a new medical provider. Couch believed the information contained in the two false letters was correct when she prepared and sent them. Couch sent the two false letters to the worker with copies to the worker's counsel, defense counsel, and plaintiff. Couch also prepared the Labor Code letter and sent it to the same recipients. All these letters were dated March 30, 2018.

Plaintiff received a copy of the indictment letter.[4] On April 10, 2018, plaintiff called Russ to discuss the error in the indictment letter. Russ and Couch took several actions later that day to correct the mistake. They attempted to fax plaintiff a letter of apology, but the fax number they used was incorrect. Russ also attempted to call worker's counsel to correct the information in the two false letters. When Russ was unable to reach worker's counsel, she called defense counsel and asked the firm to convey the correct information to worker's counsel. Finally, Russ directed Couch to prepare and send a revised indictment letter and revised follow-up letter correctly naming Dr. Rosen as the provider listed on the website of the Department of Industrial Relations. These letters were dated April 10, 2018.

---

[4] Plaintiff testified that he received the indictment letter from the worker, not Sedgwick.

5

### 3. The Complaint

In March 2019, plaintiff filed the present action against Sedgwick and CIGA. The complaint contains three causes of action: defamation, intentional interference with prospective business relations, and negligent interference with prospective business relations.[5]

Regarding the defamation claim, plaintiff generally alleged that prior to April 2018, he enjoyed a "very good professional reputation" that allowed him to establish "numerous financially rewarding relationships with patients, attorneys, and other medical professionals." But, he alleged, Sedgwick sent the indictment letter to "several" of his patients[6] and the content of the indictment letter was subsequently disseminated to many members of the community including patients, attorneys, and other medical professionals. Consequently, those lucrative relationships soured, and his practice experienced a significant drop in patients. He claimed Sedgwick "tarnished and

---

[5] Because plaintiff has not addressed the court's summary adjudication of the second and third causes of action, he has forfeited those issues on appeal. (See, e.g., *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed forfeited or waived]; *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177–1178 ["[g]enerally, appellants forfeit or abandon contentions of error regarding the dismissal of a cause of action by failing to raise or address the contentions in their briefs on appeal"]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 ["[c]ourts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge"].)

[6] Plaintiff later testified that the only person he knew received the indictment letter was the worker.

6

irreversibly damaged [his] reputation as a result of its maliciously made false statements."

Plaintiff identified as false Sedgwick's statement in the two false letters that plaintiff was listed on the Department of Industrial Relations website as a provider who had been criminally indicted for fraud or abuse of Medicare, Medi-Cal, or the workers' compensation system. He further asserted that Sedgwick was acting as an agent of CIGA when it made the false statements and that the statements were not privileged. Finally, he contended that defendants made the false statements knowing that no investigation supported the statements and therefore the statements were so knowingly reckless as to be malicious. Plaintiff sought general, special, and punitive damages.

## 4.    Summary Judgment

### 4.1.   Defendants' Arguments

Both Sedgwick and CIGA filed motions for summary judgment and/or summary adjudication of each of plaintiff's three causes of action. Defendants conceded the statements at issue were false but asserted three affirmative defenses: the litigation privilege (§ 47, subd. (b)), the common-interest privilege (section 47(c)), and the limited liability provided to CIGA and its agents under Insurance Code sections 1063.12 and 1063.2.[7]

---

[7] Because we resolve this matter on the basis of the common interest privilege, we do not discuss either the parties' or the court's analysis regarding defendants' other defenses.

With respect to the common-interest privilege,[8] defendants argued that the communication was privileged because the drafter and recipients of the letters shared a common interest in the worker's claim and in the insurance eligibility of the medical providers and treatment the worker received. As for malice, defendants explained the false statements were inadvertent and therefore not malicious. Specifically, the two false letters were prepared by Couch at Russ's direction. Russ had intended for the letters to refer to Dr. Rosen, not plaintiff. But the computerized diary entry directing Couch to prepare the letters did not identify Dr. Rosen. Consequently, Couch had assumed the entry related to plaintiff because Russ had instructed her to send the Labor Code letter regarding plaintiff at the same time.

## 4.2. Plaintiff's Arguments

In opposition to the motions for summary judgment and/or adjudication, plaintiff argued the common-interest privilege did not apply. First, plaintiff contended that the parties to the letter did not have any mutual interest. He argued defendants had not shown any evidence of a contractual relationship between themselves and either plaintiff or the worker. Further, plaintiff urged, Sedgwick and the worker did not share a mutual interest because they were in an adversarial relationship. Moreover, the parties had no common interest in *false* information about plaintiff. Finally, and in any event, plaintiff asserted that the privilege did not apply because the statements were made maliciously or in reckless disregard of plaintiff's rights.

---

[8] Section 47(c) extends a conditional privilege against defamation to statements made without malice on subjects of mutual interest.

### 4.3. Ruling

After noting that the statements at issue were undisputedly false, the court considered whether the parties to the letters—CIGA, Sedgwick, the worker, worker's counsel, and defense counsel—shared a mutual interest. The court found that the letters concerned a business relationship. CIGA, and Sedgwick as its agent, were obligated to reimburse the worker for medical treatment covered under the workers' compensation policy at issue. And the purpose of the indictment letter and follow-up letter was to ensure that plaintiff continued to receive care from medical providers approved by CIGA so that the care would be covered under the insurance policy. In sum, the communications from CIGA, by Sedgwick as its agent, to the worker and worker's counsel furthered the mutual interest of all parties regarding covered medical claims.

As to malice, the court noted that plaintiff relied on three actions (or inactions) by Sedgwick to establish a triable issue of material fact regarding defendants' intent: Couch did not independently confirm whether plaintiff was on the Department of Industrial Relations' website; Sedgwick did not send a retraction letter to the recipients of the two false letters clarifying that plaintiff was not on the indictment list; and it was disputed whether Sedgwick sent an apology letter to plaintiff. The court found that plaintiffs' evidence did not establish a triable issue concerning malice and, instead, the evidence demonstrated Sedgwick's employees were, at worst, negligent in generating the two false letters and in failing to adequately correct the misstatements contained therein. Because negligent conduct does not support an inference of malice, defendants were entitled to a judgment in their favor.

## 5.    Entry of Judgment and Appeal

The court entered a judgment in favor of defendants on January 8, 2021. Plaintiff timely appeals.

## DISCUSSION

Plaintiff contends summary judgment was inappropriate because he demonstrated triable issues of material fact regarding the common-interest privilege, specifically the absence of a mutual interest and the existence of malice. We address these issues in turn.

## 1.    Scope and Standard of Review

The standard of review is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850; Code Civ. Proc., § 437c, subd. (c).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We resolve any evidentiary doubts or ambiguities in

favor of the party opposing summary judgment. (*Saelzler,* at p. 768.) "In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to 'decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 630.) "We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Ibid.*)

The appellant has the burden to show error, even if the appellant did not bear the burden in the trial court, and " 'to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) Further, "an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.) Matters not properly raised or that lack adequate legal discussion will be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.)

**2.** **The court properly granted summary judgment because Sedgwick's false statements are protected under the common-interest privilege.**

### 2.1.  General Principles

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a

11

natural tendency to injure or that causes special damage.'
[Citation.]" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720 (*Taus*).)
Section 47(c)[9] " 'extends a conditional privilege against
defamation to statements made without malice on subjects of
mutual interests. [Citation.]' " (*Hui v. Sturbaum* (2014) 222
Cal.App.4th 1109, 1118 (*Hui*).) The existence of the privilege is
ordinarily a question of law for the court. (*Id.*, p. 1119.)

### 2.2. Mutual Interest

The common-interest privilege is " ' "recognized where the
communicator and the recipient have a common interest and the
communication is of a kind reasonably calculated to protect or
further that interest." [Citation.] The "interest" must be
something other than mere general or idle curiosity, such as
where the parties to the communication share a contractual,
business or similar relationship or the defendant is protecting his
own pecuniary interest. [Citation.] Rather, it is restricted to
"proprietary or narrow private interests." [Citations.]' [Citation.]
' "One authority explains the statutory interest as follows: (1) The
'interest' applies to a defendant who 'is protecting his own
pecuniary or proprietary interest[,]' (2) The required 'relation'
between the parties to the communication is a contractual,
business or similar relationship[,] … (3) The 'request' referred to

---

[9] As pertinent here, the statute provides, "A privileged publication or
broadcast is one made: [¶] … [¶] (c) [i]n a communication, without
malice, to a person interested therein, (1) by one who is also interested,
or (2) by one who stands in such a relation to the person interested as
to afford a reasonable ground for supposing the motive for the
communication to be innocent, or (3) who is requested by the person
interested to give the information. …"

12

must have been in the course of a business or professional relationship. [Citation].” [Citation.]’ [Citation.] … ‘ “The existence of the privilege is ordinarily a question of law for the court. [Citation.]” ’ [Citation.]” (*Hui, supra,* 222 Cal.App.4th at pp. 1118–1119.)

Plaintiff argues the common-interest privilege does not apply because there is no evidence that CIGA and Sedgwick, on one hand, and the worker and worker’s counsel, on the other hand, have a contractual relationship. Further, plaintiff urges, it cannot be said that Sedgwick and the worker and worker’s counsel have a business relationship because the relationship is “adversarial.” The court found that a business relationship existed, and we agree. CIGA, standing in the shoes of the worker’s compensation insurer, was obligated to pay for medical treatment covered under the workers’ compensation policy. Sedgwick administered the worker’s claim. And the two false letters from Sedgwick to the worker and worker’s counsel were designed to ensure that the worker obtained medical treatment from providers approved by CIGA. As the trial court observed, if the relationship between these parties is not considered a business relationship, “it would be difficult to discern what other kind of relationship they do have.”

Plaintiff apparently believes that the pendency of litigation renders all aspects of the relationship here to be adversarial—and therefore outside the scope of the common-interest privilege. First, although the record indicates litigation was pending, the nature of the litigation is unclear. Indeed, we do not know whether either CIGA or Sedgwick was sued directly by the worker or whether the litigation was initiated against the former, now-defunct, workers’ compensation insurer. Second, and in any

13

event, we are unpersuaded by plaintiff's contention that a business relationship could not exist because litigation was pending. With respect to the two false letters, Sedgwick, as CIGA's agent, was attempting to assist the worker in obtaining medical care that would be covered under the applicable policy. On that issue, all parties to the letter were both interested and aligned and the communication, though inaccurate, was designed to further that interest.

In strikingly similar circumstances, another court of appeal concluded that a common interest existed for purposes of section 47(c). In *Hui*, *supra*, a chiropractor (Hui) sued an insurance company claims investigator for defamation. The investigator had reviewed a claim file and discovered that the claimants' attorney, Kim, was being investigated regarding fraudulent claims practices. Kim frequently referred patients to Hui. The investigator also learned that Hui had prior license suspensions and one license revocation resulting from allegations of sexual misconduct. She also suspected Hui of improper billing practices in the claim at issue. The investigator shared this information about Hui with Kim's assistant during a conversation in which the assistant was attempting to settle the claim. (*Hui, supra*, 222 Cal.App.4th at pp. 1112–1113.)

The investigator filed a motion under Code of Civil Procedure section 425.16, asserting that her statements to the attorney's assistant fell within the common-interest privilege. In opposition, Hui argued that the investigator and her employer, the insurance company, did not have a mutual interest with the attorney concerning Hui because the attorney would not be interested in allegations of sexual misconduct or in assertions that they should avoid doing business with Hui. (*Hui, supra*, 222

14

Cal.App.4th at p. 1115.) The trial court and the court of appeal disagreed with Hui and concluded the claimants' attorney and the insurance company for whom the investigator worked shared a common interest. Specifically, the reviewing court noted that the insurer and the attorney shared a common interest in pursuing legitimate claims and it was, therefore, important for the claims investigator to share information about possible misconduct by a medical provider used by the attorney's clients. (*Id.*, at pp. 1119–1120.) The investigator's actions also furthered the insurer's pecuniary interest in settling meritorious claims. (*Ibid.*)

The same is true here. As noted, CIGA, Sedgwick as its agent, the worker, and worker's counsel all shared a common interest in the worker's legitimate claim and in ensuring the worker obtained treatment from approved medical providers.

Plaintiff argues, however, that *Hui* is distinguishable. He asserts that in *Hui*, the relationship between the claims investigator and the lawyer's assistant "was not purely adversarial" because the claims investigator had a direct and immediate concern in protecting the insurer's interest in settling meritorious claims and the lawyer directed his assistant to call the investigator to settle a claim. We are unpersuaded. In *Hui*, as in the present case, the parties to the communication were mutually concerned with legitimate, covered claims and mutually interested in avoiding potentially fraudulent conduct.

In short, we conclude the sender and recipients of the two false letters shared a common interest within the meaning of section 47(c). Plaintiff failed to create a dispute of fact on that issue.

15

### 2.3. Malice

As noted, the common interest privilege applies only if the communication was made without malice. (Section 47(c).) " ' "The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights [citations]." ' " (*Taus, supra,* 40 Cal.4th at p. 721; *Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370.) The defendant generally bears the initial burden of establishing that the statement in question was made on a privileged occasion, and thereafter the burden shifts to the plaintiff to establish that the statement was made with malice. (*Noel,* at p. 1370.)

Plaintiff does not contend that CIGA, Sedgwick, or Sedgwick's employees acted with ill will or hatred. Instead, he asserts that "Sedgwick's actions both before and after sending the [indictment] letter demonstrate malice[.]" A showing of malice may be based on direct or circumstantial evidence. "A defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice. [Citation.] 'A failure to investigate [fn. omitted] [citation], anger and hostility toward the plaintiff [citation], reliance upon sources known to be unreliable [citations], or known to be biased against the plaintiff [citations]—such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication.' " (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 84–85.) But " '[t]he failure to conduct a thorough and objective investigation, standing alone, does not

16

prove actual malice, nor even necessarily raise a triable issue of fact on that controversy.' (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 258.) The purposeful avoidance of the truth is, however, another matter. ' "[I]naction," i.e., failure to investigate, which "was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges" will support a finding of actual malice.' (*Antonovich v. Superior Court* (1991) 234 Cal.App.3d 1041, 1048.)" (*King v. U.S. Bank National Assn.* (2020) 53 Cal.App.5th 675, 702–703.)

The direct evidence—declarations from Russ and Couch—indicates that the defamatory statements regarding plaintiff contained in the indictment letter and the follow-up letter were accidental and, at worst, negligent. As noted, claims examiner Russ made several diary entries on March 31, 2018, relating to the worker's claim. One entry instructed Couch to send the Labor Code letter to the worker letting him know that plaintiff could not be his primary treating physician. That diary entry specifically identified plaintiff as the subject of the letter. The other entry instructed Couch to send several form letters to the worker, including one notifying the worker of the indictment issue and another instructing him to select a new provider. Although Russ intended for the indictment letter to refer to Dr. Rosen, the diary entry she created did not mention Dr. Rosen by name or otherwise identify the provider at issue. Couch received the two diary entries created by Russ at the same time and assumed both entries related to plaintiff. This evidence does not support a reasonable inference that Russ, Couch, or Sedgwick acted willfully or in reckless disregard of plaintiff's rights. Sedgwick's employees simply made a mistake.

17

Plaintiff relies on circumstantial evidence, mainly Sedgwick's actions after it became aware of its mistake, in an effort to create a dispute of material fact regarding malice. Primarily, plaintiff asserts that Sedgwick's attempts to correct its mistake after the fact were inadequate. As noted, Russ and Couch attempted to fax plaintiff a letter of apology, but the fax number they used was incorrect. Russ also attempted to call worker's counsel to correct the information in the two false letters. When Russ was unable to reach worker's counsel, she called defense counsel and asked the firm to convey the correct information to worker's counsel. Finally, Russ directed Couch to prepare and send a revised indictment letter and revised follow-up letter correctly naming Dr. Rosen as the provider listed on the website of the Department of Industrial Relations. These letters were dated April 10, 2018, the same day plaintiff called Russ to object to the letter's content.

Plaintiff suggests that a reasonable jury could find that Sedgwick acted with malice because Couch did not check the website of the Department of Industrial Relations to confirm that plaintiff was listed and she included a list of medical providers, not including plaintiff, with the indictment letter. In addition, Sedgwick did not send a retraction by fax or mail to the recipients of the two false letters. We disagree. As we have said, a negligent failure to inquire as to the truth of a statement is not, standing alone, sufficient to create a triable issue regarding malice. Something more is required, such as the willful avoidance of the truth. Plaintiff's evidence does not reasonably support such an inference.

Plaintiff also notes that on March 13, 2018, and again on March 23, 2018, Sedgwick responded to payment requests from

other providers by stating that CIGA was no longer in charge of the file. Whatever the reason for Sedgwick's response to those other providers, we are unable to see any reasonable inference of malice with regard to plaintiff.

Finally, plaintiff attempts to suggest that Russ did not call defense counsel on April 10, 2018 to correct the two false letters, as she stated. He notes that on May 15, 2018, Russ received an email from a partner at defense counsel's office stating incorrectly that plaintiff could not be the worker's primary treating doctor due to his indictment. He then asserts that because Russ took no action to correct the assertion in the email, "[t]his raises a triable issue of fact as to whether Sedgwick ever informed [defense counsel], in the first place, that [plaintiff] was not on the indicted list." Plaintiff fails to mention, however, that the partner from defense counsel's office provided a declaration confirming that Russ called on April 10, 2018 and relayed the corrected information. Given the direct evidence from both Russ and the attorney, the attenuated inference advanced by plaintiff does not create a dispute of fact as to malice.

Accordingly, plaintiff failed to create a triable issue of material fact sufficient to withstand summary judgment.

## DISPOSITION

The judgment is affirmed. Respondents Sedgwick Claims Management Services, Inc. and California Insurance Guarantee Association shall recover their costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

KIM, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.